USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA :
: 18 CR. 14 (VM)
    - against - :
: **DECISION AND ORDER**
:
VINCENT ESPOSITO, :
:
         Defendant. :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Defendant Vincent Esposito ("Esposito") is charged with participating in a racketeering conspiracy (Count I) and an extortion conspiracy (Count II) in connection with his activities as an alleged member of a criminal enterprise known as the "Genovese Family," a criminal organization that the Government charges has long been associated with the mafia in New York City. (See "Indictment," Dkt. No. 5.) Magistrate Judge Barbara Moses set bail conditions for Esposito (see Dkt. No. 12), and the Government appealed (see Dkt. No. 22). The Court denied the Government's motion to the extent it sought Esposito's detention until trial but granted it to the extent that the Government sought stricter bail conditions than those imposed by Judge Moses, including a requirement that an armed guard be stationed outside Esposito's home. (See Dkt. No. 60; Dkt. Minute Entries for 3/2/2018 and 3/23/2018.) This Decision and Order sets forth

1

the Court's findings, reasoning, and conclusions in adjudicating the Government's motion.

## I. BACKGROUND

The Indictment charges Esposito, along with Steven Arena, Frank Giovinco, Frank Cognetta, and Vincent D'Acunto, Jr. (collectively with Esposito, "Defendants"), with a racketeering conspiracy allegedly perpetrated to protect the Genovese Family's power, to intimidate its victims, and to enrich its members. (See Indictment ¶ 5.) In furtherance of the conspiracy, Defendants allegedly committed acts of extortion, solicited unlawful kickback payments, committed fraud, and used threats of physical violence and economic harm. (See id. ¶ 6.) The Indictment also charges Esposito, Steven Arena, and Vincent D'Acunto, Jr. with an extortion conspiracy whereby they allegedly used threats of violence to extract annual cash payments from an official in a labor union. (See id. ¶ 10.)

On January 10, 2018, Judge Moses held bail hearings for all of the Defendants. (See Dkt. Nos. 12-16.) With respect to Esposito's four co-defendants, the Government did not contest their release on bond with various conditions of release. (See "January 10 Transcript," Dkt. No. 24.) However, the Government sought pre-trial detention, without the possibility of release, for Esposito. (See id. at 32.) The

2

Government argued that Esposito posed a danger to the community and a risk of flight because of the following alleged facts: Esposito's "position of significant influence" in the Genovese Family; that Esposito is charged with multiple acts of extortion; that two firearms, a pair of "brass knuckles," and "a large amount of cash" were found in Esposito's home at the time of his arrest; and that Esposito did not disclose the existence of the cash assets or of his firearm ownership during his interview with a Pretrial Services officer. (See id. at 32-33, 37.)

At the time of the bail hearing, agents of the Federal Bureau of Investigations ("FBI") were still counting the cash found in Esposito's home, and the Government stated that, as of the time of that hearing, they had counted over one million dollars and reported that amount to Judge Moses. (See id. at 35.) The Government argued that the significant amount of cash, coupled with evidence of Esposito's high rank in the Genovese Family, as well as the likelihood that he had stores of cash hidden in other places, posed a risk of flight and a risk that Esposito would orchestrate threats of violence in connection with this case. (See id. at 35-36.)

Esposito argued to Judge Moses that he does not pose a serious risk of flight or a danger to the community because: he is a 50 year-old man with no criminal record; he has lived

at the same address for the last 30 years; he lives at that address with his elderly mother and his sister, with whom he co-owns the house; Esposito, along with his mother and sister, offered to secure Esposito's personal recognizance bond with a lien on their house; Esposito did not try to evade arrest; any misrepresentations Esposito made about his assets to the Pretrial Services officer were accidental and resulted from the stress of being arrested for the first time in his life; and the firearms found in his house were seized at the time of his arrest and so he could not use them to pose a danger to the community. (See id. at 43-46.) Esposito also argued that he has been charged with the same crimes as his co-defendants and should receive a bail package similar to theirs. (See id. at 45-46.)

The Government responded that although there are five defendants in the case, it sought pretrial detention only for Esposito because his situation is significantly different from that of his co-defendants based on the cash and firearms found in his house and his leadership position in the Genovese Family. (See id. at 47.)

Judge Moses found that Esposito posed some risk of flight and a danger of witness tampering or intimidation, but that such risks could be "reasonably mitigate[ed]" by properly restrictive conditions of pretrial release. (See id.

4

at 53-54.) Judge Moses then imposed the following conditions on Esposito's release: (1) a $6 million bond, to be co-signed by three financially responsible persons and secured by a pledge on Esposito's home property; (2) the surrender of any passport or other travel documents; (3) travel restricted to the Southern and Eastern Districts of New York; (4) strict pretrial supervision by this District's Pretrial Services Office; (5) home incarceration; (6) electronic location monitoring to be paid for by Esposito; and (7) the requirement that Esposito have no contact with his co-defendants except in the presence of counsel, and no contact at all with known victims or witnesses. (See id. at 54-55, 63; Dkt. No. 12.)

By letter dated January 17, 2018, the Government appealed Judge Moses's bail determination, arguing that Esposito should be detained until trial. (See "January 17 Letter," Dkt. No. 22.) The Government offered largely the same arguments it presented to Judge Moses, namely that Esposito poses a significant danger to the community and a risk of flight because he is a high-ranking member of the Genovese Family who is charged with orchestrating threats of violence with a wide network of criminal associates and controlling significant cash assets for the Genovese Family. (See id. at 4-7.)

The Government supplemented its prior arguments with several additional facts. Specifically, the Government represented that: after all of the cash found in Esposito's home at the time of his arrest was counted, it amounted to approximately $3.8 million; there is evidence that Esposito controls the Genovese Family's "slush fund," indicating that he is a high-ranking member of the organization; and, at the time of his arrest, FBI agents found two lists of "made" members of the Genovese Family in Esposito's home, indicating that Esposito has intimate knowledge of and a degree of control over membership in the organization. (See id. at 3-6.) The Government also argued that there is substantial evidence of Esposito's guilt, including, among other things, the testimony of a cooperating witness who was directly extorted by Esposito and recordings of Esposito and his associates using threats to commit extortion. (See id.)

By letter dated January 25, 2018, Esposito opposed the Government's appeal of Judge Moses's bail determination. (See "January 25 Letter," Dkt. No. 69.) Esposito argued that the Government failed to meet its burden to show that he poses a danger to the community or a risk of flight and that Judge Moses's bail determination should therefore be affirmed. (See id. at 5.) With respect to the Government's argument that he poses a danger to the community, in addition to the arguments

6

Esposito presented to Judge Moses, Esposito additionally argued that: the Government has failed to articulate Esposito's alleged role in the Genovese Family; the Government has produced no evidence that any violence was actually carried out in connection with the charged conduct; the recorded conversations of Esposito upon which the Government relies do not evince any illegal conduct; the bulk of the evidence the Government has proffered is actually against Esposito's co-defendants, for whom the Government did not seek pretrial detention; and there is no evidence that the lists of names found in Esposito's house constitute lists of members of the Genovese Family. (See id. at 5-7.) Additionally, with respect to being a risk of flight, Esposito argued that he poses no such risk because he is a lifelong resident of New York City, is the primary caregiver for his 83 year-old mother, is willing to place a lien, as a security for a personal recognizance bond, on the home in which he lives with his mother and sister, and he has almost no history of travel. (See id. at 8.)

On January 26, 2018, the Court held a hearing on the Government's appeal. (See "January 26 Transcript," Dkt. No. 44.) The Government argued, among other things, that home incarceration would not adequately restrict Esposito's ability to continue managing criminal activities involving

threats of violence because his home was the "base of operations for the past 15-plus years." (Id. at 6.) With respect to a risk of flight, the Government focused on the large amounts of cash seized at the time of Esposito's arrest, evidence that Esposito controls multiple "shell companies," and the fact that Esposito failed to disclose those assets during his pretrial interview, indicating that the "Court is completely flying blind here because there's been no honest disclosure of [Esposito's] assets." (Id. at 11-12.)

At the January 26 hearing, Esposito argued, among other things, that most of the Government's arguments for pretrial detention related to the operations of the Genovese Family generally, and not to Esposito specifically, and that Esposito should obtain similar pretrial treatment as his co-defendants, some of whom are charged with more direct acts of extortion than Esposito and have prior criminal records. (See id. at 25-26.) Esposito additionally argued that although Judge Moses was told at the initial bail hearing that two firearms were found at Esposito's home at the time of his arrest, that representation was misleading; in fact, the two objects found at the home were a "starter pistol" and an "inoperable, unloaded .22 caliber gun." (Id. at 30.) Esposito asked the Court to affirm the bail conditions set by Judge Moses, with the possible addition, if the Court deemed it

8

necessary, of requiring Esposito to pay for video surveillance of the entrance to his home. (See id. at 35-36.)

The Court then adjourned the hearing to provide Esposito time to provide an accurate inventory of his assets and for the parties to then consider the Court's guidance and determine whether they could agree on a bail package. (See id. at 54-55; see also id. at 32-33.)

On February 27, 2018, Esposito submitted a letter to the Court indicating that the parties had not reached agreement on a potential bail package and supplying similar arguments as those he previously put forth in favor of affirming Judge Moses's bail determination. (See "February 27 Letter," Dkt. No. 50.) The February 27 letter also stated that Esposito's counsel, with the aid of an accountant, attempted to "create a complete snapshot of [Esposito's] finances" by providing the Government and the Court with: 1) a list of Esposito's real property assets; 2) Esposito's state and federal tax returns for the years of 2014-2016; and 3) a statement from an accountant approximating Esposito's total net worth. (Id. at 10.)

On March 1, 2018, the Government submitted a letter arguing that Esposito's financial disclosures were insufficient to provide a "complete and reliable" picture of his assets and that those disclosures further demonstrate

9

that Esposito "lied" to the Pretrial Services officer during his initial interview. (See "March 1 Letter," Dkt. No. 51.) The Government stated that it therefore continued to seek pretrial detention for Esposito. (See id.)

On March 2, 2018, the Court held another hearing addressing the Government's appeal of Judge Moses's bail determination. (See "March 2 Transcript," Dkt. No. 54.) The Court conducted colloquies with the parties regarding the possible operation and effectiveness of various security measures — such as video surveillance or armed guards — that might mitigate the risk of Esposito's flight if he were released pending trial. (See id. at 15-40.) The Government argued that if the Court required only a video monitoring system, FBI agents would not be able to monitor the system at all times, and so there would still be too great of a risk that Esposito could escape given his substantial resources and contacts. (See id.) Esposito then proposed that he hire a Government-approved security company that could monitor the video surveillance system at all times. (See id. at 28.) The Government continued to argue that, even with a private security company monitoring the system, the Government's response to an escape in the middle of the night would be too slow to prevent Esposito's escape. (See id. at 38.)

With respect to the possibility of requiring Esposito to hire armed guards stationed outside of his home, the Government stated that such a requirement would go further to alleviate its concerns with Esposito's risk of flight but that the Government would nonetheless urge the Court to impose pretrial detention. (See id. at 40-41.) Esposito responded that the video surveillance system would be more than sufficient to alleviate the issues raised by the Government and that armed guards were not necessary. (See id. at 47-48.)

The Court then found that a bail package could be developed to allow for Esposito's pretrial release. (See id. at 50.) However, in light of the fact that significant new evidence had emerged since Judge Moses set the original bail conditions, specifically with regard to Esposito's assets in both cash and real property, some modifications to the original bail package were appropriate. (See id. at 50-51.) The Court indicated that the cash portion of the bail package should be increased and that some additional security measures would be appropriate. (See id. at 51-52.) The Court then directed the parties to confer in good faith and attempt to agree on terms for Esposito's pretrial release. (See id. at 52.)

By letter dated March 9, 2018, Esposito informed the Court that the parties had reached agreement on all conditions

11

of his pretrial release except for the issue of whether the Court should require an armed guard to be stationed at Esposito's home. (See "Esposito's March 9 Letter," Dkt. No. 70.) Esposito argued that hiring armed guards would be both "prohibitively expensive" and unnecessary to address any risk of flight he poses. (See id. at 1.) Instead, Esposito proposed installing a live-feed video surveillance system in his home and hiring a Government-approved security company to monitor that system and alert local and federal law enforcement if Esposito were to attempt an escape or otherwise violate his conditions of release. (See id. at 3.) Esposito provided two estimates from security companies estimating the annual cost of hiring an armed guard to be either $764,400 or $1,179,360. (See id. at 2.) The estimated cost of hiring a security company to monitor the video system for 24 hours per day would be $218,400 per year. (See id.)

By way of a letter also dated March 9, 2018, the Government responded to Esposito's March 9 Letter, arguing that Esposito's proposed video surveillance system would not adequately mitigate the risk of flight in this case because Esposito could flee by the time law enforcement agents had an opportunity to respond to an alert and travel to his home. (See "Government's March 9 Letter," Dkt. No. 53.)

12

The Court held a conference on March 23, 2018. (See "March 23 Transcript," Dkt. No. 62.) The Court first set a trial date of September 24, 2018. (See id. at 11.) The Court then granted the Government's appeal to the extent it sought for Esposito's bail conditions to include the requirement that Esposito pay for an armed guard to be stationed outside his home. (See id. at 12.) The Court also directed the parties to confer and submit a proposed order setting forth the conditions of Esposito's pretrial release, including the requirement for an armed guard. (See id. at 18.)

On April 3, 2018, after receiving a proposed bail package from the parties, the Court entered an order setting forth the conditions of Esposito's pretrial release. (See "Bail Order," Dkt. No. 60.) The Bail Order sets the following conditions for Esposito's release: 1) a $9.8 million personal recognizance bond, co-signed by four financially responsible persons, and secured by one million dollars in cash and a pledge on Esposito's house; 2) access to Esposito's residence to be restricted to a list of Government-approved guests; 3) a bar on Esposito's use of cellular telephones and other electronic computing devices; 4) home incarceration; 5) electronic location monitoring; 6) authorization for the Government to search Esposito's home in order to ensure his compliance with his bail conditions; 7) the requirement that

Esposito have no contact with his co-defendants except in the presence of counsel, and no contact at all with alleged victims or witnesses in the case; 8) the surrender of Esposito's passport and travel documents; 9) the requirement that an armed guard approved by the Government be stationed outside the entrance of Esposito's home at all times and accompany Esposito whenever he leaves the house, which would be permitted for court appearances, medical emergencies, and attorney visits; and 10) Esposito will be subject to strict pretrial supervision. (See id.)

## II. Discussion

A district court conducts a de novo review of a magistrate judge's decision to release or detain a defendant pending trial. United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985); Gotti v. United States, 358 F. Supp. 2d 280, 283 (S.D.N.Y. 2005). Under the Bail Reform Act of 1984, a court is to impose "the least restrictive [] condition, or combination of conditions" that will "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). A court must order detention if no combination of conditions will provide reasonable assurance that the defendant will not flee and will not pose a danger to the community. 18 U.S.C. § 3142(e). In making this

14

determination, the Court is to consider the factors listed in 18 U.S.C. § 3142(g), which include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant. "The government bears the burden of proving risk of flight by a preponderance of the evidence, but it must prove danger to the community by clear and convincing evidence." United States v. Artis, 607 F. App'x 95, 96 (2d Cir. 2015).

The Court is persuaded that, as Judge Moses found, Esposito poses some danger to the community and a risk of flight but that these risks can be reasonably mitigated by the bail conditions set forth in the Bail Order. Esposito is charged with an extortion conspiracy and a racketeering conspiracy that charges extortion as a predicate act, both of which are crimes of violence under the Bail Reform Act. See United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002). Based on the Government's representations, there appears to be sufficient evidence substantiating the allegations that Esposito is involved with a wide network of criminal associates who have used violent threats to achieve the ends of a criminal enterprise and may continue to do so in connection with this case. Although Esposito argues that the Government has failed to present evidence of his particular

15

role in the Genovese Family, that argument is beside the point: the issue is that there is sufficient evidence that Esposito has significant involvement and influence in violent activities. See United States v. Palermo, No. 99-cr-1199, 2000 WL 5023, at *1 (S.D.N.Y. Jan. 5, 2000) ("The precise position held by a defendant in a case such as this, however, is not the real point. It is the leadership role in an enterprise, such as that alleged here, which will carry out criminal activity at a defendant's direction, that supports a finding of danger to the community." (citing United States v. Colombo, 777 F.2d 96, 99 (2d Cir. 1985)).

However, the Court is not persuaded that Esposito poses such a grave danger to the community that he must be detained pending trial. Although there are serious allegations of threats of violence in this case, there do not appear to be any allegations that Esposito actually carried out any acts of violence. Additionally, the weapons found in Esposito's home appear to have been inoperable. The Court is not persuaded that Esposito poses a markedly greater danger to the community than all of his co-defendants, some of whom are accused of directly committing acts of extortion and using threats of violence on behalf of the Genovese Family.

The Court therefore finds that the danger Esposito poses to the community can be reasonably mitigated by conditions of

release that will effectively cut him off from his alleged criminal associates and take away his ability to orchestrate criminal activities. No conditions of release, or even detention for that matter, can offer an absolute guarantee that Esposito will not communicate with criminal associates, but the Court is persuaded that any danger Esposito poses can be reasonably mitigated by the conditions set forth in the Bail Order, including home incarceration, the ban on his use of a cellular telephone or any other electronic communication devices, and the requirement that access to his home will be restricted to Government-approved guests.

The Court also finds that the Government has met its burden to show that Esposito poses a risk of flight. At the time of Esposito's arrest there was approximately $3.8 million in cash in his home. The Government has further represented that there is a high probability that Esposito has access to significant amounts of other liquid assets, and that there is substantial evidence that Esposito exercises some degree of control over the Genovese Family slush fund, which, according to the Government, is kept for the purpose, among other things, of helping members of the Genovese Family flee when faced with criminal prosecution. See Palermo, 2000 WL 5023, at *2 (finding that "substantial penalties [a] defendant faces coupled with evidence which suggests he has

17

access to substantial amounts of cash" raises a risk of flight great enough to require pretrial detention).

To be sure, the risk of flight here is mitigated by Esposito's significant family ties and the fact that he has offered his family home, in which his elderly mother lives, as a security on his personal recognizance bond. As such, the Court finds that pretrial detention is not necessary to reasonably diminish the risk of Esposito's flight. However, Esposito's family ties do not eliminate the other factors indicating a substantial risk of flight. See United States v. Brennerman, 705 F. App'x 13, 16 (2d Cir. 2017) (holding that the fact that relatives of a defendant offer to act as sureties on a personal recognizance bond does not eliminate a substantial risk of flight).

The Court is not persuaded that the use of a video surveillance system, in the place of an armed guard, would reasonably reduce the risk of flight Esposito poses. Given Esposito's extensive resources and his alleged network of criminal associates, if Esposito chose to flee, he would likely have the means to functionally disappear before law enforcement agents could respond to a call that he was caught doing so by a video surveillance system. Accordingly, the Court is persuaded that the presence of an armed guard who

can prevent such attempts of flight in real-time is necessary to provide reasonable assurances that Esposito will not flee.

Esposito's primary argument against the requirement that he hire an armed guard as a condition of his release is that such a requirement would be prohibitively expensive. However, Esposito offered to bear the cost of hiring a security company to monitor a video-surveillance system for at least one year. The Court has scheduled the trial of this case to commence in approximately six months. The difference between Esposito's proposal of paying for a company to monitor the video surveillance for one year and the Court's decision to require him to pay for armed guards for approximately six months is marginal in light of Esposito's significant resources.[1]

---

[1] According to the estimates provided by Esposito, the cost of hiring a security company to monitor the video surveillance system for 24 hours per day would be approximately $218,400 per year. (See Esposito's March 9 Letter at 2.) Esposito provided two estimates for armed guard services, the lower of which was $764,400 per year. (See id.) Thus, the cost of hiring armed guards from the date of entry of the Bail Order until the end of trial should be approximately $382,200. Given Esposito's substantial resources, the Court is not persuaded that hiring armed guards for approximately six months will be substantially more burdensome for Esposito than his offer to hire a company to monitor the video-surveillance system for one year.

19

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of the Government ("Motion," Dkt. Nos. 22, 51, 53) appealing the order of Magistrate Judge Barbara Moses setting bail conditions for defendant Vincent Esposito ("Esposito") is **DENIED** to the extent it seeks an order requiring the pretrial detention of Esposito; and it is further

**ORDERED** that the Motion is **GRANTED** to the extent it seeks the imposition of amended conditions for Esposito's pretrial release, as further set forth in a separate order dated April 3, 2018 (Dkt. No. 60).

**SO ORDERED.**

Dated:    New York, New York
          18 April 2018

_____
Victor Marrero
U.S.D.J.